PROB 12C
(4/19)

# United States District Court

## for

## District of New Jersey

## Amended Petition for Warrant or Summons for Offender under Supervision

**Name of Offender:** Jose Gonzalez                **Docket Number:** 12-00759-001
                                                                                                                                                   20-00271-001
                                                                                                                                                   **PACTS Number:** 34792

**Name of Judicial Officer:**    Docket No. 12-00759-001
                                      THE HONORABLE SUSAN D. WIGENTON
                                      UNITED STATES DISTRICT JUDGE

**Name of Sentencing Judicial Officer:** Docket No. (SD/NY 13-00811-08)
                                                      THE HONORABLE ANDREW L. CARTER
                                                      UNITED STATES DISTRICT JUDGE
                                                      (JURISDICTION TRANSFERRED TO D/NJ
                                                      & DOCKETED AT 20-00271-001)

**Date of Original Sentence:** 07/02/2014 (DNJ)/04/22/2015 (SDNY)

**Original Offense:**    Docket No. 12-00759-001: Distribution of Heroin, 21 USC §§ 841(a)(1) and (b)(1)(C)
                               Docket No. 20-00271-001: Conspiracy to Burglarize Pharmacies of Controlled Substances, 18 USC § 2118(d)

**Original Sentence:** Docket No. 12-00759-001: Time Served (22 months imprisonment), 3 years supervised release, $100 Special Assessment
                            Docket No. 20-00271-001: 40 Months Custody, 3 years supervised release, $100 Special Assessment

**Special Conditions:** Docket No. 12-00759-001: Alcohol/Substance Abuse Testing and Treatment
                            Docket No. 20-00271-001: Substance Abuse Testing and Treatment; Search and Seizure; Financial Disclosure; Supervision in the District of Residence

**Type of Supervision:** Supervised Release          **Date Supervision Commenced:** 09/28/2017

**Assistant U.S. Attorney:** Emma Spiro, 970 Broad Street, 7th Floor, Newark, New Jersey 07102, (973) 645-2700

**Defense Attorney:** Chester Keller, Federal Defenders Office, 1002 Broad Street, Newark, New Jersey 07102, (973) 645-6347

---

## PETITIONING THE COURT

☐ To issue a warrant
☑ To Amend the Summons issued on January 30, 2020

Prob 12C – page 2
José Gonzalez

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | The offender has violated the mandatory supervision condition which states **'The defendant shall not commit another federal, state, or local crime during the term of supervision.'** |

On August 27, 2019, the undersigned officer received notification via the Administration Office of the United States Courts ATLAS System of an inquiry conducted on Gonzalez by the New York City Police Department (NYPD). Upon further inquiry by the undersigned officer, it was learned that an "I-Card," or an investigative warrant, had been issued for the offender by a detective in the 9th Precinct, for Assault: 3rd Degree (a Class A Misdemeanor).

On September 20, 2019, the undersigned officer spoke with the 9th Precinct detective, who confirmed that Gonzalez was wanted for an assault charge, which stemmed from an altercation he had on August 1, 2019, with the doorman of a residential building in New York. According to NYPD investigation reports, the doorman worked at the offender's former girlfriend's residence. The doorman had instructions from the former girlfriend that the offender was not permitted in the building. On August 1, the doorman attempted to stop Gonzalez from boarding the elevator, which caused a physical altercation whereby Gonzalez bit the doorman on his left forearm and tore his uniform. After several minutes of fighting and scuffling, the offender left the premises. Video surveillance of the lobby area confirmed the incident, as well as photos of the doorman's injuries.

During a home visit on October 1, 2019, the undersigned officer discussed the incident with the offender, who characterized it as a "tussle" with the doorman. The undersigned officer advised the offender there was a warrant for him in New York, and encouraged him to turn himself in. The undersigned officer telephonically contacted the 9th Precinct detective, who confirmed that the offender could turn himself in and likely be released on the same day.

On October 7, 2019, Gonzalez surrendered himself at the 9th Precinct, where he was arrested and charged with Assault: 3rd Degree. He was released on his own recognizance the same day.

A temporary restraining order was issued against the offender while the case was pending in New York Criminal Court, Docket No. CR-035801-19NY. The offender was charged with the following: Criminal Trespass 2nd (A Misdemeanor); Attempted Assault w/Physical Injury (B Misdemeanor); Criminal Trespass Enclosed Property (B Misdemeanor); Assault with Intent to Cause Physical Injury (A Misdemeanor); and Assault: Recklessly Causing Physical Injury (B Misdemeanor). The charges against him were dismissed on March 4, 2020.

| 2 | The offender has violated the special supervision condition which states **'You shall refrain from the illegal possession and use of drugs, including** |

    **prescription medication not prescribed in your name, and the use of alcohol, and shall submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that you shall submit to evaluation and treatment, on an outpatient or inpatient basis, as approved by the U.S. Probation Office. You shall abide by the rules of any program and shall remain in treatment until satisfactorily discharged by the Court. You shall alert all medical professionals of any prior substance abuse history, including any prior history of prescription drug abuse. The Probation Officer shall supervise your compliance with this condition.'**

On September 19, 2019, Gonzalez was directed to report to the probation office to meet with the undersigned officer and a supervisor for an adjustment session, given his uncooperative attitude. The offender was informed that a urinalysis would be conducted, to which he verbally admitted that it would be positive for cocaine and marijuana because he "was partying" over the previous weekend. An instant-test confirmed the positive results.

During a home visit on October 1, 2019, the offender tested positive for marijuana and alcohol. The odor of alcohol emitting from the offender's breath was detectable to the undersigned officer. Gonzalez admitted he drinks alcohol "out of boredom."

On October 31, 2019, Gonzalez was directed by the undersigned officer to report to the probation office in Newark, no later than 16:00, and meet with a duty officer to submit to a urinalysis. The offender arrived at the probation office at 16:20 and submitted a urine specimen which tested positive for cocaine and marijuana.

| | |
|---|---|
| 3 | The offender has violated the special supervision condition which states **'You shall refrain from the illegal possession and use of drugs, including prescription medication not prescribed in your name, and the use of alcohol, and shall submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that you shall submit to evaluation and treatment, on an outpatient or inpatient basis, as approved by the U.S. Probation Office. You shall abide by the rules of any program and shall remain in treatment until satisfactorily discharged by the Court. You shall alert all medical professionals of any prior substance abuse history, including any prior history of prescription drug abuse. The Probation Officer shall supervise your compliance with this condition.'** |

    On October 21, 2019, Gonzalez was referred for a substance abuse assessment at Integrity House in Newark. His initial assessment was scheduled for October 29, which he failed to attend, stating he was sick. Through text messaging with the undersigned officer, the offender expressed his belief that since he was referred for an assessment, that no treatment will be needed because he would be found not to have a drug issue. The undersigned officer explained that based on the assessment, the appropriate level of treatment would be determined and that some level of treatment was necessary. Gonzalez argued that this was his first "dirty

urine," that the government was "just trying to make money," and that if participation in treatment was too time consuming, that he would go back to prison to finish his time and "kill these papers." Gonzalez stated it was a waste of time and that the undersigned officer was "making [his] life hell," preferring that he be violated so that he could take his chances before Your Honor.

The offender's assessment was rescheduled for November 7, 2019, which he attended. According to the assessment, the offender was referred to Level 1.0 outpatient services, which consists of two days a week - three hours a day, as well as random urine screens. It was determined that the offender vacillated between the pre-contemplation and contemplation stage of change, as evidenced by his statement, "I'm not going to stop smoking weed, no matter what. I'm only here because of federal probation and I only have nine months left." A urine specimen taken at admission was positive for alcohol and marijuana. It was determined that the offender manifested symptoms of severe cannabis use and was clinically eligible for outpatient services.

Gonzalez' first treatment appointment at Integrity was scheduled for November 22, 2019. The offender failed to attend the appointment due to a scheduling conflict, and rescheduled the appointment for December 3rd, despite being afforded several other earlier appointments. Gonzalez was formally admitted to Integrity House on December 3rd, and reported for treatment on December 12th. He only reported one day that week, stating that reporting twice weekly would be difficult with his personal training schedule. The following week, he failed to report. When questioned, he stated he did not go to treatment because it was too cold out. He was verbally reprimanded by the undersigned officer and directed to attend all future appointments.

Despite being verbally instructed to not miss future appointments, the offender failed to attend any treatment appointments the week of December 23, 2019. He reported to Integrity House on January 2, 2020, but again only reported one day that week, and not the two as required. In a text exchange between the undersigned officer and the offender, the offender was reprimanded for not attending treatment as directed, and again advised he is to attend twice weekly. Gonzalez responded stating, "we agreed to once a week," "we never discussed twice a week," and "I'm not waiting time with no program s**t is 3 hours too much." The undersigned officer advised there was never an agreement to once weekly and that based on the clinical assessment conducted at Integrity, the recommended level of care was twice per week. Gonzalez again insisted he would only attend once weekly and had no intention of attending twice weekly as directed.

On January 9, 2020, Gonzalez reported to Integrity nearly one hour late to his scheduled 18:00 appointment. He provided a urine sample, which tested negative. His counselor reiterated that the offender is to attend treatment twice weekly, to which the offender stated he could not because of work. The offender was then directed to leave, as arriving so late was unacceptable. Despite being fully aware of the rules of treatment, Gonzalez failed to report to his scheduled appointments for the week of January 13th.

|   |   |
|---|---|
|   | During a home visit with Gonzalez on January 19th, the undersigned officer clearly expressed to the offender his requirements of supervised release, advising that his continued noncompliance required court intervention. The offender again stated he would not comply with the treatment requirements. Thereafter, he failed to report to treatment the week of January 20th. For the week of January 27th, he only reported on January 30th, and arrived 45 minutes late to his normally scheduled 18:00 appointment. The offender was directed to leave due to his tardiness. He was unsuccessfully discharged from the program on January 31, 2020. |
| 4 | The offender has violated the standard supervision condition which states **'The defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.'** |
|   | On October 30, 2019, the undersigned officer texted Gonzalez and directed him to report to the probation office in Newark to submit to a random urinalysis. Hours later, the offender responded, stating he would not make it to the office that day because he was booked with personal training appointments. The offender attempted to negotiate reporting to the office on November 1st (two days later). The undersigned officer advised Gonzalez that reporting for a drug test is not negotiable, and again informed him that not reporting as directed would be deemed a positive urinalysis. The offender responded stating, "the system i guess give angry people jobs." He failed to report to the office as directed. |
| 5 | The offender has violated the standard supervision condition which states **'The defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.'** |
|   | On January 24, 2020, the undersigned officer texted Gonzalez early in the morning, directing him to report to the probation office in Newark to submit to a urinalysis, given the fact he failed to report to treatment the entire week. A second text and a voicemail was left later in the morning. The offender responded hours later, stating he had been training a client all morning and that he would not be able to make it to the office. The undersigned officer advised this was a directive and nonnegotiable, and that he had until 16:00 to report. The offender failed to report as directed to the probation office. |
| 6 | The offender has violated the standard supervision condition which states **'The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.'** |
|   | On March 4, 2020, the undersigned officer received a text message from Gonzalez informing that his New York case (detailed in Violation No. 1) had been dismissed. The undersigned officer requested he submit paperwork confirming, to which Gonzalez replied he had not been given any. When the probation officer directed him to return to court to obtain verifying documentation, the offender responded by directing the probation officer to "contact them," as his returning to the court was "out of the question." Offender |

also stated via text, "Victory for Jose feds are next" (eluding to his violation of supervised release). The undersigned officer again directed Gonzalez to obtain the documentation; however, he failed to comply with this directive.

7     The offender has violated the standard supervision condition which states **'The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.'**

As the United States is currently under a state of emergency due to the COVID-19 pandemic, the United States Probation Office for the District of New Jersey has temporarily modified supervision practices and policies in order to encourage the current recommendations of the CDC and State of New Jersey. Temporary changes include expanded use of virtual supervision and social distancing practices. On March 26, 2020, the undersigned officer notified Gonzalez via text message that virtual visits would be conducted via IPhone FaceTime technology, and that the offender was obligated to answer the call when it occurred.

On March 30, 2020, the undersigned officer attempted to conduct a virtual contact with Gonzalez via IPhone FaceTime technology. The undersigned officer called the offender twice, and he failed to answer. The probation officer sent him a text message regarding the attempt, which the offender responded to an hour later, stating that his camera was broken, so his FaceTime capability was disabled. The probation officer then directed him to send his location through the IPhone to ascertain his whereabouts, to which the offender responded he did not know how to do. Despite the probation officer texting him precise directions (along with photos) to demonstrate how to do so, the offender failed to follow directives.

Similar directives sent to the offender via text messaging to provide his location on April 3rd, 7th, 14th, and 15th all went unanswered by the offender. On April 16, 2020, telephonic contact was established with the offender, who stated he did not receive any of the probation officer's text messages because he was no longer keeping his mobile on because he was no longer training clients. When the undersigned officer advised him that it was essential he keep his phone on to maintain contact, the offender's tone was that of annoyance, stating that there was no need for the probation officer to contact him "because of COVID 19." As the undersigned officer attempted to explain that his failure to follow the directives of his probation officer was in violation with his judgment of conviction, Gonzalez replied with the following statements: "my life is more important than probation;" "I'm not losing sleep over supervised release:" and that he "don't care about the violation" because a prison sentence would not be an option due to the virus. Gonzalez also expressed aggravation that he was being supervised by an "intensive supervision" officer, stating that he is not the kind of person needing such supervision, and noting that he has friends on supervised release who are "not getting harassed or questioned where they are by their PO's." The offender repeatedly interrupted the undersigned officer as she attempted to explain the reasons why he was in noncompliance, despite the officer repeatedly asking him to wait his turn and allow the officer to speak. Gonzalez then hung up the phone on the undersigned officer as she was speaking.

Prob 12C – page 7
José Gonzalez

| | |
|---|---|
| 8 | The offender has violated the standard supervision condition which states **'The defendant shall not leave the judicial district without the permission of the Court or probation officer.'** |

On March 21, 2020, Governor Phil Murphy signed Executive Order 107, directing all New Jersey residents to stay home to mitigate the impact of COVID-19. On March 22, 2020, per Governor Andrew Cuomo's "New York State on PAUSE" order, all non-essential businesses were ordered closed. This included gyms and workout facilities.

Gonzalez is a self-employed personal trainer; therefore, his occupation is deemed non-essential and he should be home during the COVID-19 pandemic. On April 2, 2020, through text messaging, Gonzalez informed he was in New York, training a client. The probation officer advised him that his occupation is deemed non-essential and that he was violating state orders. Further, the probation officer advised that he was not permitted to be in New York during the pandemic. These messages were disregarded by Gonzalez.

I declare under penalty of perjury that the foregoing is true and correct.

*Gisella M. Bassolino*
By:   Gisella M. Bassolino
       Senior U.S. Probation Officer
Date: 04/20/2020 *SA0*

---

THE COURT ORDERS:

☐ The Issuance of a Warrant

☒ The Summons issued on January 30, 2020, is hereby Amended. Date of Hearing: **5/6/2020** . (as recommended by the Probation Office)      **@ 11:00 A.M.**

☐ No Action

☐ Other

*s/Susan D. Wigenton, U.S.D.J.*
Signature of Judicial Officer

**April 24, 2020**
Date